1  Daniel M. Hattis (SBN 232141)
   Paul Karl Lukacs (SBN 197007)
2  HATTIS & LUKACS
   11711 SE 8th St, Ste 120
3  Bellevue, WA 98005
   Telephone: (425) 233-8650
4  Facsimile: (425) 412-7171
   Email: dan@hattislaw.com
5  Email: pkl@hattislaw.com

6  Stephen P. DeNittis, Esq. (pro hac vice to be submitted)
   DENITTIS OSEFCHEN PRINCE, P.C.
7  5 Greentree Centre, Suite 410
   525 Route 73 N.
8  Marlton, New Jersey 08057
   Telephone: (856) 797-9951
9  Email: sdenittis@denittislaw.com

10 *Attorneys for Plaintiffs
   and the Proposed Class*

11

12

13                 UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15 | DENISE WOODS and | Case No. 3:24-cv-3799 |
   | SHERRY TAPIA, | |
16 | For Themselves, | **CLASS ACTION** |
   | As Private Attorneys General, and | |
17 | On Behalf Of All Others Similarly Situated, | **COMPLAINT FOR:** |

18 **(1) VIOLATION OF CAL. CIVIL CODE § 1750 *et seq.*;**

19                              Plaintiffs,     **(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500 *et seq.*;**

20 v.

   **(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200 *et seq.***
21 SIRIUS XM RADIO INC.,

22                              Defendant.     **JURY TRIAL DEMANDED**

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT

Plaintiffs Denise Woods and Sherry Tapia, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendant Sirius XM Radio Inc. ("Sirius XM" or "Defendant"):

## I.   <u>INTRODUCTION AND SUMMARY</u>

1.      Plaintiffs Denise Woods and Sherry Tapia bring this action under California law on behalf of a class of California Sirius XM subscribers to challenge a deceptive pricing scheme whereby Sirius XM falsely advertises its music plans at lower prices than it actually charges. Sirius XM fails to include in its advertised prices the amount of its invented "U.S. Music Royalty Fee," which increases the true plan price by 21.4% above the advertised price for the plans.[1]

2.      Sirius XM intentionally does not disclose the Fee to its subscribers. Sirius XM even goes so far as to not mention the words "U.S. Music Royalty Fee" in <u>any</u> of its advertising, including in the fine print. Sirius XM's sole advertising disclaimer is that "Fees and taxes apply"—but in reality zero taxes and zero other fees apply to its California subscribers, such that the undisclosed U.S. Music Royalty Fee is the sole and exclusive component of "Fees and Taxes."

3.      Once consumers have been lured to sign up, Sirius XM prevents them from learning about its scheme by never thereafter sending them monthly or ongoing billing notices or invoices. All the while, Sirius XM silently and automatically renews their subscriptions month after month and year after year. And, as the price of its subscribers' music plans increase—e.g., when a promotional rate expires—the U.S. Music Royalty Fee amount, being a flat 21.4% charge, also increases.

4.      Notably, <u>none</u> of Sirius XM's competitors charge any separate royalty fee over and above their advertised music plan prices. Sirius XM knows that reasonable consumers

---

[1] The rate for the U.S. Music Royalty Fee is 21.4% for Sirius XM's <u>satellite radio</u> music plans (which comprise the overwhelming majority of Sirius XM subscriptions), and 8.8% for Sirius XM's <u>streaming-only</u> music plans (which are internet-only and do not require a satellite radio, and which comprise a tiny minority of Sirius XM subscriptions).

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

would not expect Sirius XM to charge the U.S. Music Royalty Fee, let alone disguise it as "Fees and Taxes." Rather, reasonable consumers would expect that the advertised price for Sirius XM's music plans would include the fundamental costs of obtaining the permissions necessary to provide the music content that Sirius XM has promised is included in those plans. The U.S. Music Royalty Fee is, in fact, simply a disguised double-charge for the music plan itself.

5.      Even the name of the U.S. Music Royalty Fee is deceptive. Sirius XM calls it a "U.S." fee to falsely indicate to consumers (i.e., to those few consumers who learn about its existence) that it is a government-related fee.

6.      In the event that a subscriber happens to notice the U.S. Music Royalty Fee has been charged and then contacts Sirius XM to inquire about the Fee, Sirius XM has a practice of outright falsely telling the subscriber that it is "government mandated" or is a government pass-through fee.

7.      Sirius XM's U.S. Music Royalty Fee scheme has been the source of <u>all</u> of Sirius XM's profits for the past several years. For example, in 2023, Sirius XM collected $1.36 billion in U.S. Music Royalty Fee charges, while the entire company had net profits of $1.26 billion. In other words, in 2023, U.S. Music Royalty Fee revenues were equal to 108% of the net profits for the entire company.[2]

8.      Sirius XM falsely advertised the prices of its music plans to Plaintiffs and Class members, and Sirius XM never adequately disclosed to them that the U.S. Music Royalty Fee would be charged or its true nature. Meanwhile, Sirius XM's sign-up process, automatic renewal process, and policy of not sending monthly or ongoing billing notices or invoices are deliberately designed to prevent subscribers from learning of the U.S. Music Royalty Fee.

9.      Sirius XM automatically charges the U.S. Music Royalty Fee to nearly all of its

---

[2] In 2023, Sirius XM had subscriber revenues from its SiriusXM-branded service of $6.34 billion, approximately 21.4% of which (i.e., $1.36 billion) were payments of the U.S. Music Royalty Fee. *See* 2023 10-K of Sirius XM Holdings Inc., pp. F-5, F-39, available at https://investor.siriusxm.com/sec-filings/all-sec-filings/content/0000908937-24-000008/0000908937-24-000008.pdf.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

3.97 million California subscribers (the Fee currently accounts for over $158 million in annual charges to California subscribers alone).[3] Since Sirius XM invented and introduced the Fee in 2009, Plaintiffs estimate that Sirius XM has unlawfully extracted over $1 billion from California consumers in U.S. Music Royalty Fee charges.

10. Plaintiffs Denise Woods and Sherry Tapia bring this lawsuit individually and as private attorneys general seeking public injunctive relief to protect the general public by putting an end to Sirius XM's unlawful advertising scheme. Plaintiffs also seek damages and/or restitution, on behalf of themselves and on behalf of a Class of California Sirius XM subscribers, including disgorgement of all revenues and/or unjust enrichment Sirius XM obtained from them as a result of the unlawful conduct alleged herein.

11. To be clear, Plaintiffs are <u>not</u> seeking to regulate the existence or amount of the U.S. Music Royalty Fee (although Plaintiffs contend that the name of the Fee is deceptive because Sirius XM intentionally calls it a "U.S." fee to trick consumers into thinking it is a government-related fee). Rather, Plaintiffs want Sirius XM to include the <u>amount</u> of the so-called U.S. Music Royalty Fee in the music plan prices it advertises to the general public, and to adequately disclose the Fee and its true nature and basis.

## II.  **THE PARTIES**

12. Plaintiff Denise Woods is a citizen and resident of the city of Pinole, in Contra Costa County, California.

13. Plaintiff Sherry Tapia is a citizen and resident of the city of Lemon Grove, in San Diego County, California.

14. Defendant Sirius XM Radio Inc. ("Sirius XM") is a corporation chartered under the laws of Delaware, with its principal place of business in New York. The company has office and studio/production facilities in Los Angeles, California. The company also has office and engineering facilities in San Francisco, California.

---

[3] Plaintiffs estimate that Sirius XM has approximately 3.97 million music plan subscribers in California, which would comprise 11.71% of Sirius XM's 33.9 million subscribers (California represents 11.71% of the U.S. population).

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## III.    JURISDICTION AND VENUE

15.    **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from the Defendant.

16.    **Personal Jurisdiction.** This Court has personal jurisdiction over Sirius XM because, without limitation: (1) Sirius XM is authorized to do business and regularly conducts business in the California; (2) the claims alleged herein took place in California; and/or (3) Sirius XM has committed tortious acts within California (as alleged, without limitation, throughout this Complaint). Sirius XM has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

17.    **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiff Denise Woods is a California citizen who resides in this District (specifically, in Contra Costa County). Ms. Woods also purchased her Sirius XM music plan in this District.

## IV.    FACTUAL ALLEGATIONS OF SIRIUS XM'S DECEPTIVE PRICING SCHEME

18.    Defendant provides Sirius XM-branded satellite radio and internet-only streaming plans to approximately 33.9 million consumers nationwide[4], including approximately 3.97 million Californians. Nearly all of the service plans offered by Sirius XM include music channels ("music plans").

19.    Sirius XM falsely advertises its music plans at lower rates than it actually charges by not including in the advertised price the amount of its invented "U.S. Music Royalty Fee." Sirius XM intentionally does not disclose the extra charge. Sirius XM even goes so far as to not mention the words "U.S. Music Royalty Fee" in <u>any</u> of its advertising, including in the fine print. Once consumers have been lured to sign up, Sirius XM prevents them from learning

---

[4] *See* 2023 10-K of Sirius XM Holdings Inc., p. 5, available at https://investor.siriusxm.com/sec-filings/all-sec-filings/content/0000908937-24-000008/0000908937-24-000008.pdf.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

about its scheme by never thereafter sending them monthly or ongoing billing notices or invoices. All the while, Sirius silently and automatically renews their subscriptions month after month and year after year.

20.    Sirius XM imposes the U.S. Music Royalty Fee on all subscribers of its satellite radio music plans (satellite radio subscribers comprise the overwhelming majority of Sirius XM subscribers), at a rate of 21.4% on top of the advertised and promised price of the music plan. Sirius XM also imposes the U.S. Music Royalty Fee on the relatively few subscribers of its Sirius XM-branded internet-only streaming music plans (which do not require a satellite radio), at a rate of 8.8% on top of the advertised and promised price of the music plan.[5]

21.    The overwhelming majority of Sirius XM subscribers utilize Sirius XM's services in their automobiles. There are approximately 160 million vehicles in operation with Sirius XM radios.[6] Sirius XM's satellite radios are pre-installed in 84% of the over 13 million new automobiles sold each year in the United States.[7] All of the 13 million-plus annual buyers of new vehicles are <u>automatically</u> provided a free two- to six-month trial of Sirius XM service. Sirius XM's satellite radios are also already installed in 51% of the 36 million used automobiles sold each year.[8] Many of the buyers of these used vehicles are likewise automatically enrolled in free Sirius XM trials.

---

[5] The only Sirius XM internet-only streaming music plan subscribers who are not charged the U.S. Music Royalty Fee are streaming music subscribers who are signed up and billed through the Apple App Store or Google Play Store platforms.

[6] *See* 2023 10-K of Sirius XM Holdings Inc., p. 5, available at https://investor.siriusxm.com/sec-filings/all-sec-filings/content/0000908937-24-000008/0000908937-24-000008.pdf.

[7] *See* "Car Market Puts Sirius XM's 2022 Growth Plans Into The Slow Lane," InsideRadio.com, July 28, 2022, available at https://www.insideradio.com/free/car-market-puts-Sirius XM-s-2022-growth-plans-into-the-slow-lane/article_c577b85c-0ea6-11ed-a4f3-6316ccfafd88.html#:~:text=Its%20receivers%20are%20now%20installed,satellite%20radio%20don't%20bother.

[8] *Id. See also* report on used vehicle market based on data from Cox Automotive, at https://www.autonews.com/used-cars/used-car-volume-hits-lowest-mark-nearly-decade#:~:text=The%20number%20of%20used%20cars,about%2035.8%20million%20were%20sold.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

22.     Sirius XM's business model relies on converting these millions of vehicle buyers from free trial users into paid subscribers of automatically renewing music plans.

23.     This effort begins with a revenue-sharing arrangement with the leading automakers: Sirius XM pays over $1 billion a year in subsidies and revenue splits to the automakers.[9] Pursuant to this revenue sharing arrangement, automotive dealerships submit the contact information of their recent car buyers directly to Sirius XM's marketing department. The automakers and auto dealers then get a cut of the Sirius XM subscription revenue that results.

24.     After receiving the contact information of the vehicle buyers, Sirius XM proceeds to inundate them with marketing emails, direct mailers, and telemarketing calls in an attempt to get the consumers to provide their credit or debit card information to Sirius XM so that Sirius XM can sign them up for paid—and automatically renewing—music plan subscriptions.

**A.      The U.S. Music Royalty Fee.**

25.     The U.S. Music Royalty Fee is an additional flat charge that Sirius XM collects from its music plan subscribers over and above the advertised and promised prices of its music plans. The overwhelming majority of Sirius XM customers subscribe to its <u>satellite radio</u> music plans (which require a satellite radio, and are typically attached to a particular vehicle equipped with a Sirius XM satellite radio). Sirius XM charges its satellite radio music plan subscribers a 21.4% U.S. Music Royalty Fee on top of the advertised and promised price of the music plan.

26.     In 2019, Sirius XM introduced a separate <u>streaming-only</u> music plan option, which worked over the internet and did not utilize or require a satellite radio. A very tiny minority of Sirius XM customers subscribe to such an internet streaming-only music plan.

---

[9] For example, in 2016, Sirius XM paid about $1 billion a year in subsidies and revenue splits to automakers. *See* Sisario, Ben, "Sirius XM Fights to Dominate the Dashboard of the Connected Car," New York Times, February 20, 2016 (behind pay wall at https://www.nytimes.com/2016/02/21/business/media/Sirius XM-fights-to-dominate-the-dashboard-of-the-connected-car.html).

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Sirius XM charges its (few) internet streaming-only music plan subscribers an 8.8% U.S. Music Royalty Fee on top of the advertised and promised price of the streaming music plan.

27. Sirius XM invented and first added the U.S. Music Royalty Fee to its music plans in 2009, at a 13.9% flat rate charge. Since then Sirius XM has increased the Fee to the current 21.4% rate.

28. Sirius XM's U.S. Music Royalty Fee scheme has been the source of <u>all</u> of Sirius XM's profits for the past several years. For example, in 2023, Sirius XM collected $1.36 billion in U.S. Music Royalty Fee charges, while the entire company had net profits of $1.26 billion. In other words, in 2023, U.S. Music Royalty Fee revenues were equal to 108% of the net profits for the entire company.[10]

29. The U.S. Music Royalty Fee scheme is at the heart of Sirius XM's marketing plan. The scheme enables Sirius XM to falsely advertise its music plans at much lower prices than what Sirius XM actually charges, in order to lure as many consumers as possible into signing up for automatically renewing subscriptions and paying more than they otherwise would have paid.

30. Meanwhile, Sirius XM is alone in charging such a fee. <u>None</u> of Sirius XM's major music streaming competitors (for example, Apple Music, Spotify, Amazon Music, Google Play Music) charge any such separate music royalty fee over and above their advertised music plan prices. Reasonable consumers would not expect Sirius XM to charge such a fee, let alone hide it as "Fees and Taxes." Rather, reasonable consumers would expect that the advertised price for Sirius XM's music plans would include the fundamental cost of obtaining the permissions necessary to provide the music content that Sirius XM has promised is included in those plans. The U.S. Music Royalty Fee is, in fact, simply a disguised double-charge for the music plan itself.

---

[10] In 2023, Sirius XM had subscriber revenues from its Sirius XM-branded service of $6.34 billion, approximately 21.4% of which (i.e., $1.36 billion) were payments of the U.S. Music Royalty Fee. *See* 2023 10-K of Sirius XM Holdings Inc., pp. F-5, F-39, available at https://investor.siriusxm.com/sec-filings/all-sec-filings/content/0000908937-24-000008/0000908937-24-000008.pdf.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

31.     Sirius XM automatically charges the U.S. Music Royalty Fee to nearly all of its 3.97 million California subscribers (the Fee currently accounts for over $158 million in annual charges to California subscribers alone). Since Sirius XM invented and introduced the Fee in 2009, Plaintiffs estimate that Sirius XM has unlawfully extracted over $1 billion from California consumers in U.S. Music Royalty Fee charges.

**B.      Sirius XM Misrepresents the Price of Its Music Plans in Its Advertisements and Fails to Disclose the U.S. Music Royalty Fee.**

32.     Sirius XM advertises its satellite radio and streaming music plans through marketing directed at the consuming public in California and throughout the United States via email campaigns, direct mail campaigns, telemarketing campaigns, internet advertising, television advertising, and radio advertising. Meanwhile, the tens of millions of automobiles which are equipped with a Sirius XM satellite radio, but which do not have an active trial or a current paid subscription, will constantly prompt the consumer to subscribe to Sirius XM anytime the consumer switches the car audio system to the Sirius XM radio setting.

33.     Through all of these channels, Sirius XM prominently and misleadingly advertises particular flat monthly or periodic prices for its music plans, without disclosing or including the amount of the U.S. Music Royalty Fee in the advertised price.

34.     <u>None</u> of Sirius XM's advertisements states the true music plan price after adding the amount of the U.S. Music Royalty Fee. <u>None</u> of Sirius XM's advertisements names or mentions the existence of the U.S. Music Royalty Fee or its amount—not even in the fine print. And there is no asterisk adjacent to the (deceptively low) advertised price in any of Sirius XM's advertisements or materials.

35.     Meanwhile, <u>none</u> of Sirius XM's competitors charge any separate royalty fee over and above the advertised music plan price. Sirius XM knows that reasonable consumers would not expect Sirius XM to charge the U.S. Music Royalty Fee. Sirius XM knows that reasonable consumers would expect that the advertised price for Sirius XM's music plans would include the fundamental costs of obtaining the permissions necessary to provide the

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

music content that Sirius XM has promised is included in those plans. The U.S. Music Royalty Fee is, in fact, simply a disguised double-charge for the music plan itself.

36. **Example Promotional Mailer.** Below is an example of a marketing direct mailer sent by Sirius XM in December 2022 to a consumer who was in a Sirius XM free trial that automatically came with a new vehicle:

**Sirius XM Promotional Mailer to Consumer in Free Trial With New Vehicle**



**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

37.     The above mailer is a typical example of the millions of promotional mailers that Sirius XM sends to new vehicle purchasers each year. Notably, the top right of the ad features "Get 12 Months for $5/Month," but makes no mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07) that the plan actually costs due to the Fee. There is no asterisk next to the advertised price. <u>Nowhere</u> in the entire mailer—not even in the fine print at the bottom—is there <u>any</u> mention whatsoever of the U.S. Music Royalty Fee or its amount. The only disclosure language in the entire mailer is the phrase "Fees and taxes apply," which is in small print in the circle on the left of the ad, where it also says, "See Offer Details below."

38.     But the "Offer Details" (which can be found in the fine print at the bottom of the mailer) likewise only states the same phrase "Fees and taxes apply," with no further details. It does not mention the U.S. Music Royalty Fee by name or what the additional "Fees and taxes" are or their amounts. The "Offer Details" fine print states that the plan will renew after the 12-month promotion "at then-current rates (currently, $17.99)"—but again does not disclose that the actual rate the plan will be renewed at is 21.4% higher (at a true rate of $21.84) due to the U.S. Music Royalty Fee. Nor does the mailer mention that, as the music plan rate increases from $5 to $17.99, the (undisclosed) Fee will more than triple from $1.07 to $3.85.[11]

---

[11] The intentional nature of Sirius XM's misrepresentations and omissions are further evidenced by the fact that while the <u>United States</u> company Sirius XM Radio Inc. (the Defendant) made the decision to completely avoid mentioning the name of the U.S. Music Royalty Fee or its amount in any of its advertising, the company's <u>Canadian</u> sister company, Sirius XM Canada Inc., chose a different, more honest approach. Sirius XM Canada Inc. (unlike Defendant) discloses both the name of the fee (which in Canada is called the "Music Royalty and Administrative Fee") and its percentage amount in the "Offer Details" fine print of its otherwise identical ads.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

39.      **Example Marketing Email.** Below is an example of a marketing email sent by Sirius XM in February 2023 to a consumer whose free Sirius XM trial elapsed (the free trial came with the purchase of a new vehicle):

**Sirius XM Promotional Email to Consumer Whose Free Trial Elapsed**



40.      The above email is a typical example of the emails Sirius XM sends to purchasers of new automobiles whose automatic free trials have elapsed or are soon expiring. Notably, the email states the price is "JUST $5/MO," but makes no mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07) that the plan actually costs due to the Fee.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

There is no asterisk next to the advertised price, and in fact nowhere in the entire email—not even in the fine print at the bottom—is there any mention whatsoever of the U.S. Music Royalty Fee or its amount. There is a phrase "See Offer Details," but there is no "Offer Details" section in the email. It turns out that the white "Offer Details" text is a non-obvious hyperlink (with no hyperlink indicators). If the consumer figured out to click on the "Offer Details" text on the email, the consumer would be brought to the webpage below:

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

41.     This offer/disclaimer webpage features "$5/mo for 12 months," but makes no mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07) which the plan actually costs due to the Fee. Below the prominent text "$5/mo for 12 months," smaller text reads "Then $18.99/mo. Fees & taxes apply. See **Offer Details** below."

42.     But the fine print "Offer Details" at the bottom of the webpage states only the same phrase "Fees and Taxes apply," with no further details. It does not mention the U.S. Music Royalty Fee by name or what the additional "Fees and Taxes" are or their amounts. It also fails to mention that the renewal rate will not be the promised "$18.99/mo." but rather will be 21.4% higher—where the undisclosed Fee will increase nearly four-fold to $4.06—for an actual total of $23.05 per month.

**C.     Sirius XM Fails to Disclose the U.S. Music Royalty Fee to Consumers When They Sign Up on Its Website.**

43.     For years, Sirius XM's consumer website has advertised its music plans by featuring particular flat monthly or periodic prices for the plans, without disclosing or including the amount of the U.S. Music Royalty Fee in the advertised price.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

44.     For example, in May 2023, Sirius XM's website listed the following music plans (on the "Browse Plans and Pricing" webpage).

**Music Plans Offered on the Sirius XM Website**



45.     All of these options (including both the 3-month promotional $1 price, and the stated higher prices after the 3 months) are presented as having a flat rate. The prices exclude the additional 21.4% charge for the U.S. Music Royalty Fee. The prices do not have asterisks and the only disclosure language is on the left side, where smaller print says, "Plus fees and taxes See Offer Details Below." But the "Offer Details" at the bottom of the webpage (which follows a section of "Frequently Asked Questions" that likewise makes no mention of the Fee), states only the same phrase "Fees and taxes apply." It does not mention the U.S. Music Royalty

CLASS ACTION COMPLAINT

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Fee by name or what the additional "Fees and taxes" are or their amounts.

46.     If the consumer clicks on the blue "GET" button for the respective music plan, the consumer is taken through Sirius XM's online purchase process. Each page of the purchase process features "$1 for 3 months" on the top, and smaller text stating the higher price after the 3 months (e.g., "Then 23.99/mo.").

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

47.    **Below is the final page of the online purchase process** (i.e., the order submission page) for the Platinum music plan. This final page is the only page of the entire online purchase process which lists a specific additional amount for "Fees and Taxes."

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

48.     Under "Order Summary," Sirius XM shows a price of $1.00 for 3 months of the music plan ($0.33/mo), plus "Fees and Taxes" of $0.21.

49.     Notably, counsel's investigation showed that all Sirius XM music plans (including this one) sold in California have $0.00 in "Taxes." And the only "Fee" Sirius XM ever charges in California is the undisclosed 21.4% U.S. Music Royalty Fee. Sirius XM disguises the amount of its invented and deceptive U.S. Music Royalty Fee as "Fees and Taxes." Yet in reality, the U.S. Music Royalty Fee is the sole and exclusive component of the so-called "Fees and Taxes."

50.     In this example, the $0.21 in "Fees and Taxes" is comprised entirely of the unmentioned 21.4% U.S. Music Royalty Fee (i.e., $0.21 = 21.4% of the $1.00 plan price). Similarly, when the promotional rate of "$1.00 for 3 months" expires and the subscriber's monthly rate automatically increases to the stated "$23.99/mo.," the U.S. Music Royalty Fee comprises the entire amount of the additional "Fees and Taxes" of $5.13 per month.

51.     Sirius XM knows and intends that reasonable consumers will understand and assume that the amount listed as "Fees and Taxes" is comprised of legitimate taxes and government-related fees passed on by Sirius XM to its subscribers.

52.     Sirius XM knows and intends that reasonable consumers would not expect that Sirius XM—unlike every other music streaming service—would invent and charge the so-called "U.S. Music Royalty Fee" over and above the advertised price for the music plan. Sirius XM knows that reasonable consumers would expect that the advertised price for Sirius XM's music plans would include the fundamental costs of obtaining the permissions necessary to provide the music content that Sirius XM has promised is included in those plans. The U.S. Music Royalty Fee is, in fact, simply a disguised double-charge for the music plan itself.

**D.     Sirius XM Fails to Disclose the U.S. Music Royalty Fee to Consumers When They Sign Up Over the Phone.**

53.     Likewise, Sirius XM sales and customer service agents have been trained for years, as a matter of company policy, to present consumers with advertised flat monthly or periodic prices for its music plans without disclosing the U.S. Music Royalty Fee. The music

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

plan prices that agents quote to consumers—just like Sirius XM's advertising—exclude the cost of the U.S. Music Royalty Fee.

54. Sirius XM's U.S. Music Royalty Fee scheme enables Sirius XM to falsely advertise and present its music plans at much lower prices than what Sirius XM actually charges, in order to lure as many consumers as possible into signing up for automatically renewing subscriptions and paying more than they otherwise would have paid.

**E.     In Order to Prevent Subscribers From Learning of Its Scheme, Sirius XM Signs Up Subscribers for Auto-Renewal by Default and Then Never Sends Them Monthly or Ongoing Billing Notices or Invoices.**

55. Sirius XM's automatic renewal and billing process are designed to prevent its subscribers from learning of its U.S. Music Royalty Fee scheme. Sirius XM signs up subscribers for automatic renewal by default (most subscribers have monthly plans, but Sirius XM also offers quarterly, semi-annual, and longer plans).

56. Once consumers have been lured to sign up, Sirius XM prevents them from learning about its scheme by never thereafter sending them monthly or ongoing billing notices or invoices. All the while, Sirius XM silently and automatically renews their subscriptions month after month and year after year

57. Most Sirius XM subscribers sign up for a paid subscription with Sirius XM by providing their credit card or debit card for a multi-month greatly discounted promotional rate. The only evidence of the ongoing monthly (or other subscription term) charges by Sirius XM that a subscriber may find is on his or her bank or credit card billing statement—which only lists a dollar amount and makes no mention of the U.S. Music Royalty Fee.

58. It is telling that while Sirius XM intentionally sends <u>zero</u> monthly or ongoing billing notices or invoices to its subscribers, Sirius XM meanwhile makes sure to inundate and benumb these same subscribers with <u>marketing</u> emails nearly every other day (totaling over a dozen each month), such that subscribers come to assume that any emails they receive from Sirius XM are marketing or promotional emails.

**F.     Sirius XM Continues to Deceive Subscribers After They Sign Up.**

59. Sirius XM continues to deceive subscribers about the true price of its music

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

plans and about the existence and nature of the U.S. Music Royalty Fee, even after they have signed up.

60.     As discussed above, once consumers have been lured to sign up, Sirius XM prevents them from learning about its scheme by never thereafter sending them monthly or ongoing billing notices or invoices.

61.     But even if a subscriber discovered the existence of the U.S. Music Royalty Fee, Sirius XM has taken actions and implemented policies to intentionally mislead the subscriber into thinking it is "government mandated" or is a government pass-through fee.

62.     First, Sirius XM intentionally chose a name for the Fee that suggests it is a government fee. Sirius XM calls it a "U.S." fee to falsely indicate to consumers (i.e., to those few subscribers who learn about its existence) that it is government mandated or is a government pass-through fee.

63.     Second, in the event that a subscriber contacts Sirius XM to inquire about the Fee, Sirius XM agents outright falsely tell the subscriber that the Fee is "government mandated" or is a government pass-through fee.

64.     For example, below is a screenshot of part of an online chat conversation that a subscriber had with Sirius XM on March 10, 2023, where the Sirius XM agent falsely told the subscriber that the U.S. Music Royalty Fee was "government mandated":

CLASS ACTION COMPLAINT

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com



65. The chat agent's statement that the U.S. Music Royalty Fee was "government mandated" reflects Sirius XM's policy of falsely telling subscribers who ask about the Fee that it is government mandated or is a government pass-through fee.

## V. **PLAINTIFFS' FACTUAL ALLEGATIONS**

**Plaintiff Denise Woods**

66. Plaintiff Denise Woods is, and at all relevant times has been, a citizen and resident of the city of Pinole, in Contra Costa County, California.

67. In late 2019, Ms. Woods' husband bought a new car that came with a free Sirius XM music plan trial subscription. After the free trial had ended, Ms. Woods' husband called Sirius XM to learn about Sirius XM's music plans and prices. He ultimately purchased a music plan subscription that was being offered at a promotional price for a one-year service term.

68. At the end of the one-year subscription, Ms. Woods' husband called Sirius XM to ask for another promotional rate for a one-year service term. The agent that he spoke with agreed to give him another promotional rate for a one-year service term.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1      69.    In April 2022, Ms. Woods' husband passed away.

2      70.    The next time the one-year subscription ended, Ms. Woods called Sirius XM to

3   learn about Sirius XM's music plans and prices. The agent that she spoke with offered her a

4   promotional rate for a one-year service term. The agent quoted her a specific promotional price

5   for the one-year music plan subscription. The quoted and promised price did not include the

6   additional amount of the U.S. Music Royalty Fee. The agent also did not mention the existence

7   of the U.S. Music Royalty Fee.

8      71.    Relying on the representations of the Sirius XM agent, Ms. Woods purchased

9   the music plan subscription.

10     72.    When this one-year subscription ended, Ms. Woods called Sirius XM again to

11  ask for another promotional rate for a one-year service term. The agent that she spoke with

12  agreed to give her another promotional rate for a one-year service term. The quoted and

13  promised price did not include the additional amount of the U.S. Music Royalty Fee. The agent

14  also did not mention the existence of the U.S. Music Royalty Fee.

15     73.    Relying on the representations of the Sirius XM agent, Ms. Woods purchased

16  the music plan subscription.

17     74.    Sirius XM has never emailed or mailed Ms. Woods a single monthly billing

18  notice or invoice.

19     75.    Each time that Ms. Woods signed up for a Sirius XM music plan, she was

20  relying on Sirius XM's explicit representations regarding the monthly price of the music plan.

21  Ms. Woods did not expect (and she was never told) that Sirius XM would actually charge her

22  an additional music plan charge on top of the advertised and quoted music plan price in the

23  form of a so-called U.S. Music Royalty Fee or that the true price of the music plan would

24  include the additional cost of the U.S. Music Royalty Fee. That information would have been

25  material to her. Had she known that information she would not have been willing to pay as

26  much for her music plans and would have acted differently.

27     76.    Ms. Woods has a legal right to rely now, and in the future, on the truthfulness

28  and accuracy of Sirius XM's representations and advertisements regarding its music plan

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

prices. Ms. Woods believes that she was given the services Sirius XM promised her—just not at the prices Sirius XM promised and advertised to her.

77.     Ms. Woods remains a Sirius XM subscriber as of this filing. Ms. Woods desires to sign up for Sirius XM music plans in the future. However, Ms. Woods wants to be confident that the advertised and quoted price for Sirius XM's music plans is the true and full price for the plan (i.e., that it includes all applicable discretionary monthly service charges such as the U.S. Music Royalty Fee). And, if Sirius XM introduces any new or invented discretionary monthly service charge (like it did with the U.S. Music Royalty Fee), Ms. Woods wants to be confident that Sirius XM will include the amount of that service charge in the advertised and quoted music plan price. Ms. Woods will be harmed if, in the future, she is left to guess as to whether Sirius XM's representations are accurate and whether there are omissions of material facts regarding the music plans being advertised and represented to her.

78.     Ms. Woods first learned of Sirius XM's U.S. Music Royalty Fee scheme on January 8, 2024, when she saw a legal investigation advertisement on TopClassActions.com discussing the scheme. Prior to reading the advertisement, Ms. Woods did not know or suspect that Sirius XM was secretly adding an additional music plan charge above the quoted rate in the form of the U.S. Music Royalty Fee. Ms. Woods completed and submitted a form on the investigation webpage that same day, January 8, 2024, to learn if she qualified to be part of the legal actions.

**Plaintiff Sherry Tapia**

79.     Plaintiff Sherry Tapia is, and at all relevant times has been, a citizen and resident of the city of Lemon Grove, in San Diego County, California.

80.     In 2017, Ms. Tapia purchased a car that came with a free Sirius XM music plan trial subscription.

81.     When her free trial ended, Ms. Tapia called Sirius XM to learn about Sirius XM's music plans and prices. The Sirius XM agent that Ms. Tapia spoke with offered her a specific promotional price for a one-year music plan subscription. The quoted and promised price did not include the additional amount of the U.S. Music Royalty Fee. The agent also did

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

not mention the existence of the U.S. Music Royalty Fee.

82.     Relying on the representations of the Sirius XM agent, Ms. Tapia purchased the one-year music plan subscription.

83.     Within the next year, Ms. Tapia signed up for two additional music plan subscriptions. Her experience signing up for the other two music plan subscriptions was materially the same as when she signed up for her first music plan subscription. In both instances, Ms. Tapia called Sirius XM to learn what promotional offers were available; the agent that she spoke with offered her a specific promotional price for a one-year music plan subscription; the quoted price did not include the additional amount of the U.S. Music Royalty Fee; and the agent also did not mention the existence of the U.S. Music Royalty Fee.

84.     Up until 2020, whenever one of her one-year music plan subscriptions ended, Ms. Tapia would call Sirius XM to ask for another promotional price for one year. Each time she did this, the agent that she spoke with offered her a specific promotional price for a one-year music plan subscription that did not include the additional amount of the U.S. Music Royalty Fee; and the agent also did not mention the existence of the U.S. Music Royalty Fee.

85.     In 2020, Ms. Tapia stopped calling Sirius XM to ask for new promotional offers. Instead, Ms. Tapia began using Sirius XM's online chat feature on its website to ask for new promotional offers.

86.     Ms. Tapia's experience using Sirius XM's online chat feature was materially the same as when she would call Sirius XM. Whenever one of her one-year music plan subscriptions ended, Ms. Tapia would visit Sirius XM's website and contact an online chat agent to ask for another promotional price for one year. Each time she did this, the chat agent that she talked to offered her a specific promotional price for a one-year music plan subscription that did not include the additional amount of the U.S. Music Royalty Fee; and the agent also did not mention the existence of the U.S. Music Royalty Fee.

87.     In June 2023, when all three of her one-year music plan subscriptions ended, Ms. Tapia switched to monthly subscriptions for all three music plans. Specifically, the online chat agent that she talked to offered her a specific promotional price of $5.99 a month for Sirius

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

XM's Music & Entertainment music plan for one year. The $5.99 price for the music plan did not include the additional amount of the U.S. Music Royalty Fee; and the agent also did not mention the existence of the U.S. Music Royalty Fee.

88.     As of the date of this filing, Ms. Tapia continues to have three monthly music subscription plans.

89.     Since Ms. Tapia signed up, Sirius XM has never emailed or mailed her a single monthly billing notice or invoice.

90.     Each time that Ms. Tapia signed up for a Sirius XM music plan, she was relying on Sirius XM's explicit representations regarding the monthly price of the music plan. Ms. Tapia did not expect (and she was never told) that Sirius XM would actually charge her an additional music plan charge on top of the advertised and quoted music plan price in the form of a so-called U.S. Music Royalty Fee or that the true price of the music plan would include the additional cost of the U.S. Music Royalty Fee. That information would have been material to her. Had she known that information she would not have been willing to pay as much for her music plans and would have acted differently.

91.     Ms. Tapia has a legal right to rely now, and in the future, on the truthfulness and accuracy of Sirius XM's representations and advertisements regarding its music plan prices. Ms. Tapia believes that she was given the services Sirius XM promised her—just not at the prices Sirius XM promised and advertised to her.

92.     Ms. Tapia remains a Sirius XM subscriber as of this filing. Ms. Tapia desires to sign up for Sirius XM music plans in the future. However, Ms. Tapia wants to be confident that the advertised and quoted price for Sirius XM's music plans is the true and full price for the plan (i.e., that it includes all applicable discretionary monthly service charges such as the U.S. Music Royalty Fee). And, if Sirius XM introduces any new or invented discretionary monthly service charge (like it did with the U.S. Music Royalty Fee), Ms. Tapia wants to be confident that Sirius XM will include the amount of that service charge in the advertised and quoted music plan price. Ms. Tapia will be harmed if, in the future, she is left to guess as to whether

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Sirius XM's representations are accurate and whether there are omissions of material facts regarding the music plans being advertised and represented to her.

93.     Ms. Tapia first learned of Sirius XM's U.S. Music Royalty Fee scheme on January 4, 2024, when she saw a legal investigation advertisement on TopClassActions.com discussing the scheme. Prior to reading the advertisement, Ms. Tapia did not know or suspect that Sirius XM was secretly adding an additional music plan charge above the quoted rate in the form of the U.S. Music Royalty Fee. Ms. Tapia completed and submitted a form on the investigation webpage that same day, January 4, 2024, to learn if she qualified to be part of the legal actions.

## CLASS ALLEGATIONS

94.     Plaintiffs Denise Woods and Sherry Tapia bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

95.     **Class Definition:** Plaintiffs seek to represent the following Class:

> **All current and former Sirius XM subscribers in California who signed up for a music plan on the phone with Sirius XM, and who paid a "U.S. Music Royalty Fee" within the applicable statute of limitations.**

96.     Specifically excluded from the Class are Sirius XM and any entities in which Sirius XM has a controlling interest, Sirius XM's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

97.     **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to the date on which Sirius XM first began charging the U.S. Music Royalty Fee—which, based on the investigation of Plaintiffs' counsel, is in 2009. Plaintiffs and the Class could not have, with the exercise of reasonable diligence, learned of the accrual of their claims against Sirius XM at an earlier time because the nature of Sirius XM's misconduct was non-obvious and intentionally concealed, as described throughout the Complaint and reiterated below.

**HATTIS & LUKACS**
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

98. <u>First</u>, none of Sirius XM's advertisements for its music plans names or mentions the existence of the U.S. Music Royalty Fee or its amount—not even in the fine print. Likewise, none of Sirius XM's advertisements states the true music plan price after adding the amount of the U.S. Music Royalty Fee. Reasonable consumers who viewed Sirius XM's advertisements would not know or suspect that Sirius XM's music plans were subject to a hidden double-charge for the music plan itself in the form of the U.S. Music Royalty Fee.

99. <u>Second</u>, Sirius XM does not disclose the U.S. Music Royalty Fee or its amount to subscribers when they sign up for music plans, as described in detail above at ¶¶ 32–54. Reasonable consumers would justifiably rely on Sirius XM's explicit representations regarding the monthly prices of its music plans, and would reasonably believe that any extra charges would only come from legitimate government fees or taxes.

100. Notably, <u>none</u> of Sirius XM's competitors charge any separate royalty fee over and above their advertised music plan prices. Indeed, reasonable consumers would expect that the advertised price for Sirius XM's music plans would include the fundamental costs of obtaining the permissions necessary to provide the music content that Sirius XM has promised is included in those plans.

101. Reasonable consumers would have no reason to suspect that Sirius XM was actually charging them a hidden and disguised double-charge for the music plans in the form of the U.S. Music Royalty Fee.

102. <u>Third</u>, Sirius XM has implemented policies and practices which prevent its subscribers from noticing that they are being charged the Fee or from discovering its true nature. Sirius XM signs up subscribers for automatic renewal by default. Once consumers have been lured to sign up, Sirius XM prevents them from learning about its scheme by never thereafter sending them monthly or ongoing billing notices or invoices. All the while, Sirius XM silently and automatically renews their subscriptions month after month and year after year.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

103.    Meanwhile, if the subscriber were to log into his or her customer account on the Sirius XM website, the default view shows only the total amount due and does not list, let alone explain, the U.S. Music Royalty Fee.

104.    Sirius XM also intentionally chose a name for the Fee that suggests it is a government fee. Sirius XM calls it a "U.S." fee to falsely indicate to consumers (i.e., to those few subscribers who learn about its existence) that it is government mandated or a government pass-through fee.

105.    <u>Fourth</u>, in the event that a subscriber happens to notice that the U.S. Music Royalty Fee has been charged and contacts Sirius XM to inquire about the Fee, Sirius XM agents outright falsely tell subscribers that the Fee is "government mandated" or is a government pass-through fee, as documented above at ¶¶ 63–65. A reasonable consumer would take Sirius XM at its word and believe that the U.S. Music Royalty Fee was a government-related fee. Thus, a reasonable consumer would not discover the true nature of the Fee or discover Sirius XM's deceptive pricing scheme even if they somehow learned of its existence (however, the vast majority of subscribers never notice the existence of the Fee at all).

106.    **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises millions of individuals. The exact number and identities of Class members are contained in Sirius XM's records and can be easily ascertained from those records.

107.    **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.    Whether Sirius XM employed a uniform policy of charging the U.S. Music Royalty Fee to Plaintiffs and Class members who subscribed to its music plans;

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

b.     Whether Sirius XM's policy and practice of advertising and quoting the prices of its music plans without the amount of the U.S. Music Royalty Fee is false, deceptive, or misleading;

c.     Why did Sirius XM not include the amounts of the U.S. Music Royalty Fee in the advertised and quoted prices for its music plans;

d.     Whether Sirius XM adequately and accurately disclosed the existence of the U.S. Music Royalty Fee, its nature or basis, or its amount, to Plaintiffs and Class members;

e.     What is the nature or purpose of the U.S. Music Royalty Fee;

f.     Whether it was deceptive, misleading, and/or false for Sirius XM to put "U.S." in the beginning of the name of the U.S. Music Royalty Fee;

g.     Whether the true prices of Sirius XM's music plans, and of the U.S. Music Royalty Fee, are material information, such that a reasonable consumer would find that information important to the consumer's purchase decision;

h.     Whether Sirius XM has a policy and practice of signing up subscribers for automatic renewal, but never thereafter sending the subscriber any monthly or ongoing billing notices or invoices;

i.     Whether Sirius XM has a policy of intentionally preventing subscribers from noticing that they are being charged the Fee, including, but not limited to, Sirius XM's practice of signing up subscribers for automatic renewal but then never thereafter sending the subscriber any monthly or ongoing billing notices or invoices;

j.     Whether Sirius XM has a practice of falsely telling subscribers who notice and inquire about the U.S. Music Royalty Fee that it is "government mandated" or is a government pass-through fee; and

k.     Whether Sirius XM's misrepresentations and misconduct alleged herein violate California Civil Code § 1750 *et seq.* (CLRA), California Business & Professions Code § 17500 *et seq.* (FAL), and California Business & Professions Code § 17200 *et seq.* (UCL).

108.     **Typicality.** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of Sirius XM's standard practices and

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

schemes, bring the same claims, and face the same potential defenses.

109. **Adequacy.** Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class members. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

110. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Sirius XM's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

111. By its conduct and omissions alleged herein, Sirius XM has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

112. Sirius XM is primarily engaged in the business of selling services. Each cause of action brought by Plaintiffs against Sirius XM in this Complaint arises from and is limited to statements or conduct by Sirius XM that consist of representations of fact about Sirius XM's business operations or services that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Sirius XM's services or the statements are or were made in the course of delivering Sirius XM's services. Each cause of action brought by Plaintiffs against Sirius XM in this Complaint arises from and is limited to statements or conduct by Sirius XM for which the intended audience is an actual or potential customer or subscriber, or a person likely to repeat the statements to, or otherwise influence, an

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    actual or potential customer or subscriber.

2                                    **CAUSES OF ACTION**

3                                  **FIRST CAUSE OF ACTION**
                     **Violation of the Consumers Legal Remedies Act ("CLRA")**
4                            **California Civil Code § 1750 *et seq.***

5          113.    Plaintiffs Denise Woods and Sherry Tapia reallege and incorporate by reference

6    all paragraphs previously alleged herein.

7          114.    Each Plaintiff brings this claim in her individual capacity, in her capacity as a

8    private attorney general seeking the imposition of public injunctive relief to protect the general

9    public, and as a representative of the Class.

10         115.    Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

11         116.    Plaintiffs and Class members are each "consumers," as defined by Cal. Civ.

12   Code §1761(d).

13         117.    Sirius XM's music plans are "services," as defined by Cal. Civ. Code § 1761(b).

14         118.    The purchase of a Sirius XM music plan by Plaintiffs and Class members is a

15   "transaction," as defined by Cal. Civ. Code § 1761(e).

16         119.    Plaintiffs and Class members purchased Sirius XM's music plans for personal,

17   family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

18         120.    Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion

19   of the transactions at issue occurred in Contra Costa County. Plaintiffs' declarations

20   establishing that this Court is a proper venue for this action are attached hereto as **Exhibit A.**

21         121.    By its conduct and omissions alleged herein, Sirius XM has committed unlawful

22   methods, acts or practices, including without limitation by:

23              a.    Misrepresenting the prices of Sirius XM's music plans and concealing

24   the true prices of its music plans, including by advertising or quoting prices that did not include

25   the U.S. Music Royalty Fee;

26              b.    Failing to disclose the Fee—or to even mention the words "U.S. Music

27   Royalty Fee"—in <u>any</u> Sirius XM advertising, including in the fine print;

28

---

CLASS ACTION COMPLAINT                           - 30 -

c.     Failing to disclose or adequately disclose the existence, nature, and amount of the U.S. Music Royalty Fee when consumers signed up for Sirius XM's music plans;

d.     Failing to ever adequately or accurately disclose the existence and nature of the U.S. Music Royalty Fee to its subscribers;

e.     Failing to disclose and misrepresenting the nature of the U.S. Music Royalty Fee by disguising it as "Fees and Taxes";

f.     Signing up customers for automatic renewal by default but never thereafter sending the customer any monthly or ongoing billing notices or invoices, thereby further preventing its subscribers from discovering the U.S. Music Royalty Fee scheme;

g.     Putting "U.S." in the beginning of the name of the U.S. Music Royalty Fee to falsely indicate to consumers that it is a government-related fee; and

h.     Falsely stating to subscribers who discovered and inquired about the U.S. Music Royalty Fee that it is "government mandated" or is a government pass-through fee.

122.     The unlawful methods, acts or practices alleged herein to have been undertaken by Sirius XM were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Sirius XM did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

123.     Sirius XM's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

a.     Sirius XM represented that its music plans had characteristics that they did not have. (Cal. Civ. Code § 1770(a)(5));

b.     Sirius XM advertised its music plans with an intent not to sell them as advertised. (Cal. Civ. Code § 1770(a)(9));

c.     Sirius XM made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions (Cal. Civ. Code § 1770(a)(13));

d.     Sirius XM misrepresented that its music plans were supplied in accordance with previous representations when they were not. (Cal. Civ. Code § 1770(a)(16)); and

HATTIS & LUKACS
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

e.    Sirius XM advertised, displayed, and offered a price for its music plans that did not include all mandatory fees or charges other than taxes or fees imposed by a government on the transaction. (Cal. Civ. Code § 1770(a)(29)).

124.    With respect to any omissions, Sirius XM at all relevant times had a duty to disclose the information in question because, inter alia: (a) Sirius XM had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Sirius XM concealed material information from Plaintiffs and Class members; and (c) Sirius XM made partial representations, including regarding the supposed price of its music plans, which were false and misleading absent the omitted information.

125.    Sirius XM's misrepresentations deceive and have a tendency to deceive the general public.

126.    Sirius XM's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

127.    Plaintiffs and Class members reasonably relied on Sirius XM's material misrepresentations, and would not have purchased, or would have paid less money for, Sirius XM's music plans had they known the truth.

128.    By its conduct and omissions alleged herein, Sirius XM caused the demand for its music plans to be artificially increased and caused all subscribers of those plans, including Plaintiffs and Class members, to pay premiums to Sirius XM.

129.    As a direct and proximate result of Sirius XM's violations of the CLRA, Plaintiffs and Class members have been harmed and lost money or property in the amount of the U.S. Music Royalty Fees they were charged and paid.

130.    Sirius XM's conduct has caused substantial injury to Plaintiffs, Class members, and the general public.

131.    Plaintiffs lack an adequate remedy at law to prevent Sirius XM's continued unlawful practices. Plaintiffs will be harmed in the future by their inability to rely on the truthfulness and accuracy of Sirius XM's representations and advertisements regarding its

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

music plan prices. Plaintiffs desire and intend to sign up for different Sirius XM music plans and/or to sign up for another promotional period in the future. However, Plaintiffs want to be confident that the advertised and quoted price for Sirius XM's music plans is the true and full price for the plan (i.e., that it includes all applicable discretionary service charges). And, if Sirius XM introduces any new discretionary service charge, Plaintiffs want to be confident that Sirius XM will include the amount of that service charge in the advertised and quoted music plan price. Plaintiffs will be harmed if, in the future, they are left to guess as to whether Sirius XM's representations are accurate and whether there are omissions of material facts regarding the music plans being advertised and represented to them.

132. Monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: <u>First</u>, damages are not an adequate remedy for future harm because they will not prevent Sirius XM from continuing its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know: (1) what music plan(s) Plaintiffs may want or need in the future; (2) what Sirius XM's future U.S. Music Royalty Fees will be (given that the Fee is calculated as a percentage of the quoted music plan price, and given that Sirius XM has increased the percentage rate of the Fee over time); or (3) how many months Plaintiffs would continue to subscribe to Sirius XM's services. Because these factors are unknown, damages are impossible to calculate and cannot be awarded for future harm. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by the general public, Class members, and Plaintiffs for future violations of the law by Sirius XM.

133. Plaintiffs, on behalf of themselves and as private attorneys general, seek **public injunctive relief** under the CLRA to protect the general public from Sirius XM's false advertisements, misrepresentations, and omissions. Specifically, Plaintiffs seek a permanent public injunction against Sirius XM under the CLRA as follows: **(1)** enjoin Sirius XM from

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

falsely advertising the prices of its music plans to members of the general public; **(2)** enjoin Sirius XM from advertising or quoting a music plan price to members of the general public if that price does not include all applicable discretionary service charges (such as the U.S. Music Royalty Fee); and **(3)** enjoin Sirius XM from representing to members of the public that the U.S. Music Royalty Fee is a "government mandated" charge, a pass-through government charge, a charge imposed to recover costs billed to Sirius XM by the government, a tax, or a charge over which Sirius XM has no control.

134. Sirius XM's misconduct which affects the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Sirius XM absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Sirius XM from committing these practices which harm the general public.

135. In accordance with California Civil Code § 1782(a), Plaintiffs, through counsel, served Sirius XM with notice of its CLRA violations by USPS certified mail and via FedEx on January 20, 2024, which was received by Sirius XM on January 23, 2024. Additionally, the notice was emailed to Sirius XM's counsel on January 20, 2024.

136. The notice was sent on behalf of a group of clients including Plaintiffs Denise Woods and Sherry Tapia, and the notice stated it was also for the benefit of a class of similarly situated California consumers. The letter demanded that Sirius XM: "(1) return all the money that Sirius XM California subscribers have paid in U.S. Music Royalty Fees; and (2) stop advertising and promising to consumers a particular price for its music plans, when in fact Sirius XM intends to charge a higher price by charging additional discretionary service charges such as the U.S. Music Royalty Fee."

137. Sirius XM failed to give, or to agree to give within a reasonable time, an appropriate correction, repair, replacement, or other remedy for its CLRA violations within 30 days of its receipt of the CLRA demand notice. Indeed, Sirius XM made no response whatsoever to the CLRA demand notice. Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiffs and the Class are entitled to recover compensatory and exemplary damages, attorneys' fees and costs, and any other relief the Court deems proper for Sirius XM's

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  CLRA violations.

2  <u>**SECOND CAUSE OF ACTION**</u>
   **Violation of California's False Advertising Law ("FAL")**
3  **California Business & Professions Code § 17500 *et seq.***

4      138.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged

5  herein.

6      139.    Each Plaintiff brings this claim in her individual capacity, in her capacity as a

7  private attorney general seeking the imposition of public injunctive relief, and as a

8  representative of the Class.

9      140.    By its conduct and omissions alleged herein, Sirius XM has committed acts of

10 untrue or misleading advertising, as defined by and in violation of California Business &

11 Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL").

12 These acts include but are not limited to:

13          a.      Misrepresenting the prices of Sirius XM's music plans and concealing

14 the true prices of its music plans in its advertising;

15          b.      Misrepresenting the prices of Sirius XM's music plans by advertising or

16 quoting prices that did not include the U.S. Music Royalty Fee;

17          c.      Failing to disclose or adequately disclose the existence, amount, or

18 nature of the U.S. Music Royalty Fee; and

19          d.      Misrepresenting to members of the public that Sirius XM's own

20 discretionary service charges are taxes, government or regulatory fees, "government

21 mandated," government pass-through fees, charges imposed to recover costs billed to Sirius

22 XM by the government, or charges over which Sirius XM has no control.

23     141.    With respect to omissions, Sirius XM at all relevant times had a duty to disclose

24 the information in question because, inter alia: (a) Sirius XM had exclusive knowledge of

25 material information that was not known to Plaintiffs and Class members; (b) Sirius XM

26 concealed material information from Plaintiffs and Class members; and (c) Sirius XM made

27 partial representations, including regarding the supposed prices of its music plans, which were

28 false or misleading absent the omitted information.

---

CLASS ACTION COMPLAINT

- 35 -

142.     Sirius XM committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or Sirius XM, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

143.     Sirius XM's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

144.     Sirius XM's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

145.     Plaintiffs and Class members reasonably relied on Sirius XM's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Sirius XM's music plans had they known the truth.

146.     By its conduct and omissions alleged herein, Sirius XM received more money from Plaintiffs and Class members than it should have received, in the form of U.S. Music Royalty Fees, and that money is subject to restitution.

147.     By its conduct and omissions alleged herein, Sirius XM caused the demand for its music plans to be artificially increased and caused all subscribers of those plans, including Plaintiffs and Class members, to pay premiums to Sirius XM.

148.     As a direct and proximate result of Sirius XM's violations of the FAL, Plaintiffs and Class members lost money.

149.     Plaintiffs lack an adequate remedy at law to prevent Sirius XM's continued unlawful practices, as previously discussed in ¶ 131 above.

150.     Monetary damages are not an adequate remedy at law for future harm, as previously discussed in ¶ 132 above.

151.     Plaintiffs, on behalf of themselves and as private attorneys general, seek **public injunctive relief** under the FAL to protect the general public from Sirius XM's false advertisements, misrepresentations, and omissions. Specifically, Plaintiffs seek a permanent public injunction against Sirius XM under the FAL as follows: **(1)** enjoin Sirius XM from falsely advertising the prices of its music plans to members of the general public; **(2)** enjoin

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Sirius XM from advertising or quoting a music plan price to members of the general public if that price does not include all applicable discretionary service charges (such as the U.S. Music Royalty Fee); and **(3)** enjoin Sirius XM from representing to members of the public that the U.S. Music Royalty Fee is a "government mandated" charge, a pass-through government charge, a charge imposed to recover costs billed to Sirius XM by the government, a tax, or a charge over which Sirius XM has no control.

152.    Sirius XM's false advertising which affects the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Sirius XM absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Sirius XM from committing these practices which harm the general public.

153.    Plaintiffs seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## THIRD CAUSE OF ACTION
### Violation of California's Unfair Competition Law ("UCL")
### California Business & Professions Code § 17200 *et seq.*

154.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

155.    Each Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

156.    California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.

157.    **"Unlawful" Prong.** Sirius XM has violated the UCL by engaging in the following unlawful business acts and practices:

    a.    Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (13), and (16) (the CLRA);

    b.    Advertising, displaying, and offering a price for its music plans that did

HATTIS & LUKACS
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

not include all mandatory fees or charges other than taxes or fees imposed by a government on the transaction, in violation of Cal. Civ. Code § 1770(a)(29) (the CLRA);

     c.     Making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL); and

     d.     Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710.

158.    **"Unfair" and "Fraudulent" Prongs.** Sirius XM has violated the UCL by engaging in the following unfair and fraudulent business acts and practices:

     a.     Misrepresenting the prices of Sirius XM's music plans and concealing the true prices of its music plans, including by advertising or quoting prices that did not include the U.S. Music Royalty Fee;

     b.     Failing to disclose the Fee—or to even mention the words "U.S. Music Royalty Fee"—in <u>any</u> Sirius XM advertising, including in the fine print;

     c.     Failing to disclose or adequately disclose the existence, nature, and amount of the U.S. Music Royalty Fee when consumers signed up for Sirius XM's music plans;

     d.     Failing to ever adequately or accurately disclose the existence and nature of the U.S. Music Royalty Fee to its subscribers;

     e.     Failing to disclose and misrepresenting the nature of the U.S. Music Royalty Fee by disguising it as "Fees and Taxes";

     f.     Signing up customers for automatic renewal by default but never thereafter sending the customer any monthly or ongoing billing notices or invoices, thereby further preventing its subscribers from discovering the U.S. Music Royalty Fee scheme;

     g.     Putting "U.S." in the beginning of the name of the U.S. Music Royalty Fee to falsely indicate to consumers that it is a government-related fee; and

     h.     Falsely stating to subscribers who discovered and inquired about the U.S. Music Royalty Fee that it is "government mandated" or is a government pass-through fee.

159.    With respect to omissions, Sirius XM at all relevant times had a duty to disclose the information in question because, inter alia: (a) Sirius XM had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Sirius XM

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

concealed material information from Plaintiffs and Class members; and (c) Sirius XM made partial representations, including regarding the supposed prices of its music plans, which were false and misleading absent the omitted information.

160. Sirius XM's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

161. Sirius XM's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

162. Plaintiffs and members of the Class reasonably relied on Sirius XM's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Sirius XM's music plans had they known the truth.

163. By its conduct and omissions alleged herein, Sirius XM received more money from Plaintiffs and Class members than it should have received, including the U.S. Music Royalty Fees that Sirius XM charged them on top of the advertised or quoted price for the music plans, and that money is subject to restitution.

164. By its conduct and omissions alleged herein, Sirius XM caused the demand for its music plans to be artificially increased and caused all subscribers of those plans, including Plaintiffs and Class members, to pay premiums to Sirius XM.

165. As a direct and proximate result of Sirius XM's unlawful, unfair, and fraudulent conduct, Plaintiffs and Class members lost money.

166. Sirius XM's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Sirius XM's conduct is oppressive and substantially injurious to consumers. By its conduct alleged herein, Sirius XM has improperly extracted hundreds of millions of dollars from California consumers. There is no utility to Sirius XM's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Sirius XM's conduct alleged herein.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

167. Plaintiffs lack an adequate remedy at law to prevent Sirius XM's continued unlawful practices, as previously discussed in ¶ 131 above.

168. Monetary damages are not an adequate remedy at law for future harm, as previously discussed in ¶ 132 above.

169. Plaintiffs, on behalf of themselves and as private attorneys general, seek **public injunctive relief** under the UCL to protect the general public from Sirius XM's false advertisements, misrepresentations, and omissions. Specifically, Plaintiffs seek a permanent public injunction against Sirius XM under the UCL as follows: **(1)** enjoin Sirius XM from falsely advertising the prices of its music plans to members of the general public; **(2)** enjoin Sirius XM from advertising or quoting a music plan price to members of the general public if that price does not include all applicable discretionary service charges (such as the U.S. Music Royalty Fee); and **(3)** enjoin Sirius XM from representing to members of the public that the U.S. Music Royalty Fee is a "government mandated" charge, a pass-through government charge, a charge imposed to recover costs billed to Sirius XM by the government, a tax, or a charge over which Sirius XM has no control.

170. Sirius XM's misconduct which affects the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Sirius XM absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Sirius XM from committing these practices which harm the general public.

171. Plaintiffs seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**PRAYER FOR RELIEF**

**Public Injunctive Relief:**

A. In order to prevent injury to the general public, Plaintiffs individually, and as private attorneys general, request that the Court enter a public injunction against Sirius XM under the CLRA, FAL, and UCL as follows:

1. Permanently enjoin Sirius XM from falsely advertising the prices of its music plans and from concealing the true prices of its music plans in its advertising;

2. Permanently enjoin Sirius XM from advertising or quoting a music plan price to members of the general public if that price does not include the amount of the U.S. Music Royalty Fee;

3. Permanently enjoin Sirius XM from advertising or quoting a music plan price to members of the general public if that price does not include all applicable discretionary service charges;

4. Permanently enjoin Sirius XM, including Sirius XM's sales agents, from representing or stating to members of the general public that the U.S. Music Royalty Fee is any of the following: (a) a "government mandated" fee; (b) a government pass-through fee; (c) a charge imposed to recover costs billed to Sirius XM by the government; (d) a tax; or (e) a charge over which Sirius XM has no control; and

5. Retain jurisdiction to monitor Sirius XM's compliance with the permanent public injunctive relief requested hereinabove.

**Individual And Class Relief:**

B. On behalf of themselves and the proposed Class, Plaintiffs request that the Court order relief and enter judgment against Sirius XM as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiffs and their counsel to represent the Class;

2. Order that the discovery rule applies to extend any applicable limitations period and the corresponding class period for the Class to the date on which Sirius XM first began charging the U.S. Music Royalty Fee (which, based on the investigation of Plaintiffs'

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

counsel, is 2009);

       3.     Declare that Sirius XM's conduct alleged herein violates the CLRA, FAL, and UCL;

       4.     Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Sirius XM obtained, directly or indirectly, from Plaintiffs and Class members as a result of the unlawful conduct alleged herein;

       5.     Order Sirius XM to pay damages to Plaintiffs and Class members in the amount they paid in U.S. Music Royalty Fees; and

       6.     Order Sirius XM to pay exemplary and/or punitive damages.

**Other Relief:**

       C.     On behalf of themselves and the proposed Class, and in their capacities as private attorneys general, Plaintiffs request that the Court order relief as follows:

       1.     Order Sirius XM to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

       2.     Grant such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually, as private attorneys general to protect the general public, and as class representatives on behalf of all others similarly situated, demand a trial by jury on all issues so triable.

Date: June 25, 2024.

       Presented by:

       HATTIS & LUKACS

       By: _____
       Daniel M. Hattis (SBN 232141)
       Paul Karl Lukacs (SBN 197007)
       HATTIS & LUKACS
       11711 SE 8th St, Ste 120
       Bellevue, WA 98005

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Telephone: (425) 233-8650
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Attorneys for Plaintiffs and the Proposed Class

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com